DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MATTHEW L. McCARTHY (CABN 217871)
Assistant United States Attorney
     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-6838
     Fax: (415) 436-6982
     Matthew.McCarthy@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 13-0515-001 CRB |
| Plaintiff, | |
| v. | UNITED STATES' SENTENCING MEMORANDUM AND REQUEST FOR UPWARD VARIANCE |
| RYAN PATRICK BALLETTO, | |
| Defendant. | |

U.S. SENTENCING MEMORANDUM
CR 13-0515 CRB

1

**INTRODUCTION**

Defendant Ryan Patrick Balletto pleaded guilty to Count One, a violation of 21 U.S.C. §§ 846 and 841(a)(1) (Conspiracy to Manufacture, Possess with Intent to Distribute, and Distribute Marijuana); Count Three, a violation of 18 U.S.C. § 924(c) (Possession of Firearms in Furtherance of Narcotics Trafficking); and Count Four, a violation of 21 U.S.C. § 861 (Employment of a Minor to Violate Drug Laws) of the Indictment.  The defendant and the United States entered a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), under which the parties agreed to recommend a sentence of between 324 and 384 months imprisonment, followed by 15 years of Supervised Release.

The U.S. Probation Office prepared a Presentence Investigation Report, which calculated the defendant to have a Criminal History Category of I, an offense level of 33.  The resulting Guidelines Range is 135-168 months.  The statutory minimum 60 month sentence for Count Three must be consecutive to any other sentence imposed, resulting a total Guidelines Range of 195-228 months.  The U.S. Probation Office has recommended that the Court impose a sentence of 324 months.

For the reasons set forth below, the government respectfully requests that the Court impose the maximum sentence under the Plea Agreement of 384 months.  The government is aware that this sentence is significant but, for the reasons set forth below, the sentence in reasonable and appropriate in this case.

**LEGAL STANDARD AT SENTENCING**

Under Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct guidelines range.  *Carty*, 520 F.3d at 991.

Although the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 127 S. Ct. 2456, 2464 (2007).  The guidelines range will be the starting point and the initial benchmark for the sentence.  *Carty*, 520 F.3d at 991.  The Court should keep the guidelines range in mind throughout the process, allow the parties to

U.S. SENTENCING MEMORANDUM
CR 13-0515 CRB

1  argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C.

2  § 3553(a).  *Id.*

3       If the Court imposes a sentence outside the guidelines range, it should ensure that its

4  justification for deviating from the range is sufficiently compelling to support the degree of variance in

5  the sentence that it imposes.  *Carty*, 520 F.3d at 991.  The Court should make an individualized

6  determination based on the facts of each case.  *Id.*  The Court, however, is not required to raise every

7  possible relevant issue sua sponte.  *Id.*

8  **A.     The Correct Guidelines Range Is 120 Months**

9       **1.     The Guidelines Calculation**

10      The government believes that the following sentencing guidelines calculation is correct:

11           a. Base Offense Level, U.S.S.G. § 2D1.1(c)(8) + (a)(5):          24

12           b. Specific Offense Characteristics:

13                Use of Violence, U.S.S.G. § 2D1.1(b)(2):               +2

14                Maintenance of Drug Premises, U.S.S.G. § 2D1.1(b)(12):  +2

15                Involvement of a Minor in the Offense, U.S.S.G. § 2D1.2  +2

16           c. Victim Related Adjustment, U.S.S.G. § 3A1.3:            +2

17           d. Organizer / Leader                                       +4

18           d. Acceptance of Responsibility:                           -3

19           e. Adjusted Offense Level:                                 33

20   The Probation Office agrees with this Offense Level.  (PSR ¶ 42.)

21      **2.     The Defendant's Criminal History Category Is CHC I**

22      The government agrees with the Probation Officer's calculation that the defendant's Criminal

23  History Category is I.  (PSR ¶¶ 44-49.)

24      **3.     The Correct Guidelines Range Is 195-228 Months**

25      The Guidelines range for the offenses in Counts One and Four is 135-168 months.  (PSR ¶ 70.)

26  The Guidelines range for Count Three is the statutory minimum term of 60 months, which must be

27  U.S. SENTENCING MEMORANDUM
28  CR 13-0515 CRB

imposed consecutively to any other counts.  (PSR ¶¶ 68-70.)  Accordingly, the combined Guidelines range of all counts of conviction is 195-228 months.

**B.    A Sentence of 384 Months Imprisonment Satisfies the Statutory Factors Set Forth in § 3553(a)**

      **1.    The Nature and Circumstances of the Offense**

The government believes that a significant prison sentence, above the ordinary guidelines range, is warranted in this case.  To begin with, section 3553(a)(1) directs the Court to consider the nature and circumstances of the offense.  The nature and circumstances of this offense are far outside the "ordinary" marijuana-related prosecutions in this District, and they strongly support the requested sentence of imprisonment.  Indeed, the circumstances of this offense are among the most horrific of any case prosecuted in this District in recent memory.

As set forth in the Plea Agreement, the defendant conspired with Patrick Pearmain to tend a large marijuana grow in Lake County, California.  (Plea Agreement ¶ 2.)  They intended to harvest over 1,300 marijuana plants, which they would sell for profit.  But that conspiracy is only the beginning of the criminal conduct in this case, which included the sadistic physical, sexual, and psychological abuse of a fifteen year-old girl over a prolonged period of time.

<u>The Defendant's Abuse of the Minor in Connection with the Growing Operation</u>

The defendant travelled to Los Angeles in April of 2013, where he met the minor victim in this case (hereafter referred to as "the minor").  The defendant told the minor that he was married and had children, and that she could come to live with him in Northern California.  The minor agreed to go with him, but instead of taking her to his wife and children, he drove her hundreds of miles north to property that he owned in Lake County, California.  The defendant was growing marijuana on this property with Pearmain and others.

Almost immediately, the defendant recruited the minor to work with him and Pearmain to grow marijuana, including "trimming" the marijuana buds for eventual sale.  While the minor initially agreed to help voluntarily, the defendant later coerced her into working for him.  In connection with this coercion, the defendant physically and sexually abused the minor.

The defendant has admitted in his plea agreement that the physical abuse of the minor included:

- Restraining the minor;

- Electrically shocking the minor;

- Forcibly confining the minor in a small metal tool chest; and

- Chaining the minor to a couch or bed by her neck.  (Plea Agreement ¶ 2.)

The defendant's admissions are confirmed by the statements of the minor herself,[1] as well as physical evidence recovered by law enforcement personnel.  As set forth in the Presentence report, a search of the Lake County property found numerous items consistent with this abuse, including:

- A metal toolbox measuring 4' long by 2' wide by 2' deep that had air-holes drilled into it and contained a blanket;[2]

- A large wooden frame with eyebolts at the corners which appeared to be a "rack" used to restrain the minor;

- A towel found underneath the "rack" that tested positive for the presence of blood; and

- A rope tied into a noose.  (PSR ¶ 19.)

In addition, an electric cattle prod was found on the property, and packaging for that device was found in the vehicle driven by co-defendant Pearmain at the time of his arrest.  (*See* Plea Agreement, Attachment A; PSR ¶ 12.)

The defendant further has admitted to engaging in sexual abuse of the minor on "more than one occasion," while she was being required to work in the marijuana business.  The defendant admits that he is aware that the minor was only 15 years old at this time, and he admits that she was being held against her will.  (Plea Agreement ¶ 2.)  Additional details of this sexual abuse are contained in

---

[1] To protect the minor's privacy, the details of her statement are not set forth here.  A summary can be found in the Presentence Report at paragraphs 20-21.  The Court will also no doubt recall the courageous and compelling statement given by the minor at the sentencing of Patrick Pearmain on April 19, 2019.  The government expects that the minor will provide an impact statement at this sentencing hearing as well.

[2] .  Human hair was found inside the box, along with an affixed decal depicting a human skull and the words "Bone Collector."  (PSR ¶ 19.)

U.S. SENTENCING MEMORANDUM
CR 13-0515 CRB

5

Paragraph 20 of the Presentence Report.

The defendant's abuse of the minor was prolonged over a period of days and weeks.  The defendant admits that he kept a chain around the minor's neck for three or four *days*.  (Plea Agreement ¶ 2.)  While the defendant admits only that he confined the minor to the box "on at least one occasion" (*id.*), the victim has explained that she was so confined on two occasions for a total of three *days*.  (PSR ¶ 20.)  The minor was therefore physically confined, either by a chain around her neck or by imprisonment in a small metal box, for nearly a full week.

It is important to note that this abuse was not merely incidental to the marijuana growing operation – it was directly connected.  As set forth in the Presentence Report, the minor understood that Balletto and Pearmain considered their marijuana grow to be a "mission," and that one of the reasons they locked her in the tool box was to protect "the mission," as they did not want her to "ruin the mission" or "go off and say something about the mission."  (PSR ¶ 21.)  Co-defendant Pearmain told the minor that they put her in the box because they had "a whole lot of money on this [the marijuana grow] right now."  (*Id.*)  Moreover, the defendant admitted that he kept a chain around the minor's neck *while she was trimming marijuana* at the grow site.  (PSR ¶ 22.)  Thus, the physical restraint and abuse inflicted on the minor was directly in furtherance of the defendant's criminal enterprise.

The totality of this abuse is hard to comprehend.  For days on end, the defendant restrained a teenage girl, physically abused her, shocked her with a cattle prod, and sexually abused her.  All of this conduct took place in an isolated location in the mountains of Lake County, where there was no one the minor could turn to for help or rescue.

<u>The Defendant's Possession of Firearms in Furtherance of the Growing Operation</u>

In addition, the defendant's criminal conduct was supported by an arsenal of dangerous weapons.  While working at his marijuana grow, the defendant possessed two AR-15 style assault rifles, one of which was fitted with a night vision scope.  (Plea Agreement ¶ 2.)  He also possessed three pistols, including a loaded pistol that he kept under his bed while he slept.  (*Id.*)   The defendant admits that these weapons were backed by a "large cache of ammunition."  (*Id.*)  He further admits that he kept these weapons at the grow site "in order to defend the site against people who might attempt to steal

U.S. SENTENCING MEMORANDUM
CR 13-0515 CRB

marijuana." (*Id.*)  The defendant's arsenal also included ballistic face masks, a helmet, a flak jacket, an armored plate carrier, night vision devices, and a gas mask.  (PSR ¶ 17.)  An agent with the Defense Criminal Investigative Services indicated that several of these items are military quality, and available only to soldiers on the battlefield.  (*Id.*)

The defendant's possession of this arsenal of weapons and defensive equipment is even more troubling in light of his training in the military.  The defendant served in the Marine Corps, where he received a Rifle Marksmanship Badge.  (PSR ¶ 63.)  In sum, the defendant not only possessed these deadly weapons – he also knew how to use them.

The Defendant's Efforts to Hide the Minor from the Police

On April 30, 2013, the defendant learned that the police were looking for him and the minor. (Plea Agreement ¶ 2.)  The defendant and Pearmain then made a plan to move her away from their grow site and attempt to avoid police attention.  In furtherance of this effort, Pearmain drove the victim from Lake County to West Sacramento, California, and instructed her to call the police and lie about her condition and whereabouts.   The defendant gave Pearmain $1,000 to fund this effort.  Pearmain instructed the victim to tell the police that "she was OK, that she was with friends, and that she was all right." (*Id.*)  These were all lies.  In fact, she was being held against her will by men who physically and sexually abused her while they were forcing her to work for them.

At one point while Pearmain and the minor were in West Sacramento, the defendant drove down from the grow site and met with them, then returned to the grow.  The next day, law enforcement officers rescued the minor and arrested the defendant and Pearmain.

**2.     The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

Section 3533(a)(2) further directs that Court to consider  "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  The proposed sentence comports with these goals as well.

The agreed-upon sentence is substantial, but that substantial sentence is necessary to reflect the seriousness of the offense conduct.  As discussed in detail above, the seriousness of this offense,

U.S. SENTENCING MEMORANDUM
CR 13-0515 CRB

7

involving the violent and cruel exploitation of a minor victim, cannot be overstated.  This kind of exploitation and violence calls for substantial punishment, and the 384 month sentence provided in the Plea Agreement is sufficient, but not greater than necessary, to reflect the seriousness of this conduct. *See* 18 U.S.C. § 3553(a).

Similarly, the proposed sentence will promote respect for the law.  This sentence clearly indicates that violent and coercive conduct in furtherance of drug trafficking will be punished more severely than the drug trafficking itself.  An above-guidelines sentence also promotes the important ideal that the law serves to protect vulnerable victims, such as minor children, from this type of coercion and abuse.

Finally, the proposed sentence provides just punishment for the offense.  The concept of "just punishment" is one of the most difficult to define in criminal law, but there can be little dispute that the physical and sexual abuse perpetrated in connection with the offenses warrants some of the most severe punishment available.  A sentence of 384 months provides such punishment in this case.

While the sentence sought here is certainly long when compared to most narcotics offenses in this District, it is not inconsistent with sentences in cases involving the sexual exploitation of minor victims.  For example, in *United States v. Telles*, 16-00424 JSW, Judge White recently sentenced the defendant to 302 months imprisonment (consecutive to the two years of imprisonment imposed for the same conduct in the United Kingdom) for his sexual abuse of a 14 year-old girl.  While the conduct in that case was horrific, it did not include the firearms and prolonged physical abuse and restraint that are at issue here.  Similarly, in *United States v. Zara*, 11-00819 SI, Judge Illston sentenced the defendant to 480 months imprisonment for his sexual abuse of minor victims in connection with the production and distribution of child pornography.  Finally, in *United States v. Kyle*, 10-00245 CRB, this Court sentenced the defendant to a term of 360 months for his sexual abuse of a minor victim in connection with child pornography.

The sentences in these cases reflect the seriousness of crimes involving the sexual abuse and exploitation of minor victims.  Where, as here, that sexual abuse is combined with coerced labor, physical abuse, restraint, and firearms, a sentence of 384 months is warranted.

U.S. SENTENCING MEMORANDUM
CR 13-0515 CRB

8

**3.      The Need to Protect the Public from Further Crimes of the Defendant**

The criminal conduct before the Court is heinous, and the sentence recommended by the government will further the important statutory goal of protecting the public from additional crimes. The extent of this conduct, including both its duration and its severity gives the government significant concern regarding the risk that the defendant will commit further crimes absent a lengthy term of imprisonment.[3]

**C.      The Court Should Impose a Fifteen Year Term of Supervised Release, Including the Conditions Set Forth in the Plea Agreement**

In the Plea Agreement, the parties jointly recommend that the Court impose a term of Supervised Release of fifteen years following the term of imprisonment.  (Plea Agreement ¶ 8.)  The government believes that such a term is important here in light of the offense conduct detailed above.  Moreover, the parties have agreed to two specific terms of Supervised Release: (1) the Court should order the defendant to register as a sex offender pursuant to California Penal Code section 290.005(b); and (2) the Court should impose an expanded search condition as set forth in Paragraph 9 of the Plea Agreement. The government believes that both of these terms are reasonably related to deterrence and rehabilitation, and therefore respectfully requests that they be imposed.

**D.      The Court Should Order the Defendant to Pay the Victim Restitution as Set forth in 18 U.S.C. § 3663**

In his Plea Agreement, the defendant has agreed "to pay restitution for all losses caused by all of the schemes or offenses to with which [he] was charged in this case." (Plea Agreement, ¶ 10.) Restitution for violations of 21 U.S.C. 846 and 861 (the counts of conviction here) is governed by 18 U.S.C. § 3663, which provides that the Court may order the defendant to, *inter alia*:

> (A)   pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

---

[3] The government's concerns in this regard are further addressed in its Supplemental Sentencing Memorandum, which is filed under seal for reasons discussed therein.

U.S. SENTENCING MEMORANDUM
CR 13-0515 CRB

9

       (B)   pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

       (C)   reimburse the victim for income lost by such victim as a result of such offense.

18 U.S.C. § 3663(b)(2).

       The victim's mother has submitted records reflecting costs that she was forced to incur to travel to visit the victim while the victim was receiving psychiatric and psychological care in a residential facility in another state for several months after the victim was rescued.  The government now requests that the Court order the defendant to pay restitution for those costs.  For a total of seven trips over an eight month period, the victim's mother has requested $5,434.28.  This amount includes $2,318.30 for airfare, $2,145.38 for hotel accommodations, and $970.60 for car rentals.

       With respect to category (C), the government believes that the Court should order the defendant to reimburse the defendant for the reasonable cost of her coerced labor.   In cases brought under the human trafficking statutes, such restitution is mandatory. *See, e.g.*, 18 U.S.C. § 1593.  Here, while such restitution is not required, the government believes that it can serve as a relatively small but still significant aspect of the total sentence in this case.

       There is no way of calculating the actual lost income of the victim with exactitude, but a reasonable calculation of those wages is possible.  The victim "worked" for the defendants for approximately three weeks.  Adopting an 8-hour workday, and the then prevailing California minimum wage of $9.00 per hour, the victim's unpaid wages can be calculated as:

Days worked:  21

Hours worked: 21 days x 8 hours/day = 168 hours

Wages owed: 168 hours x $9.00/hour = $1,344

       In a sense, a restitution award of $1,344 is a de minimus figure considering the trauma and violence endured by the victim.  However, this restitution award is at least a symbolic attempt to recognize that the defendant should receive some compensation for the labor that was taken from her against her will.  The restitution statute does not provide for compensation for pain and suffering, nor

does it provide for punitive monetary awards.  Instead, it provides a mechanism to reimburse the victim for her lost income.  The Court should order the defendant to pay that, at the very least.

In total, the government requests that the Court order restitution in the amount of **$6,778.28**.  The Court has previously order that co-defendant Patrick Pearmain pay restitution in these amounts, and the government requests that the Court order that the defendant be jointly-and-severably liable for the restitution award.  *See, e.g.*, *United States v. Angelica*, 951 F.2d 1007 (9th Cir. 1991) (approving joint-and-severable restitution award).

### CONCLUSION

For the reasons set forth above, as well as those set forth in the Presentence Report, the government respectfully requests that the Court sentence the defendant to a 384-month term of imprisonment, followed by 15 years of supervised release.

DATED: July 3, 2019

DAVID L. ANDERSON
United States Attorney

_____
MATTHEW L. McCARTHY
KEVIN J. BARRY
Assistant United States Attorneys

U.S. SENTENCING MEMORANDUM
CR 13-0515 CRB

11